# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| HAMMEL J. CLARK,<br><br>    Plaintiff,<br><br>    v.<br><br>DENISE GELSINGER,<br><br>    Defendant. | Civil Action No. TDC-16-0921 |

## MEMORANDUM ORDER

Plaintiff Hammel J. Clark, a prisoner incarcerated at the Jessup Correctional Institution ("JCI') in Jessup, Maryland, filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Warden Richard J. Graham, Jr., former Assistant Warden Denise Gelsinger, Lt. Larry C. Bennett, Sgt. Jason A. Daddysman, Sgt. Thomas C. Menges, and Correctional Officer ("C.O.") II Alicia A. Cartwright. Clark alleged that while he was incarcerated at the Western Correctional Institution ("WCI"), (1) Daddysman wrongfully took a religious headpiece from him and verbally and physically assaulted him as part of a pattern of harassment; (2) Clark was removed from the "honor building" and placed in a cell covered in human feces in retaliation for asserting complaints; and (3) his due process rights were violated when his administrative complaints about Daddysman and the headpiece's confiscation were mishandled and denied. Defendants previously a filed Motion to Dismiss, or, in the Alternative, for Summary Judgment ("the First Motion"), which the Court granted in part and denied in part. *See Clark v. Daddysman* ("*Clark I*"), No. TDC-16-0921, 2018 WL 1453333 (D. Md. Mar. 22, 2018), *appeal dismissed sub nom. Clark v. Gelsinger*, 738 F. App'x 244 (4th Cir. 2018). Assistant Warden Gelsinger is the only remaining

Defendant. The two remaining claims are that Clark was placed in a feces-covered cell for two weeks in violation of the Eighth Amendment of the United States Constitution and that his placement in that cell was in retaliation for filing complaints against Gelsinger, in violation of the First Amendment.

Although the Court directed Gelsinger to file an Answer to these claims, Gelsinger instead filed a "Supplemental Factual Memorandum in Support of Defendant Denise Gelsinger's Motion for Summary Judgment," construed as a renewed Motion for Summary Judgment ("the Second Motion"), which provides additional factual background but no new argument. Clark has responded. Having reviewed the Complaint and submitted materials, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be denied.

## BACKGROUND

The Court has set forth the factual background of this case in its Memorandum Opinion of March 22, 2018, which is incorporated by reference. On the remaining issue of Clark's cell assignment, at the time of the First Motion, the record reflected that immediately following his March 16, 2016 encounter with Daddysman:

> Clark returned to his cell, where he learned that he was being moved out of the "honor building" and into a cell in Housing Unit No. 3, which he considered the worst unit in the prison. Clark alleges that this new cell had human feces and urine spread around in different spots, left behind by an inmate known to put his own feces all over his cell. When Clark refused to go into the filthy cell, the correctional officers threatened to place him in lock up. Clark asked to be put in one of the clean empty cells nearby, but that request was denied. According to Clark, he spent several days cleaning up the cell, feces got on his shoes, his wheelchair, and his hands, and the cell reeked of human waste even after the cleaning, so that he felt sick and could not eat. When he complained to Assistant Warden Denise Gelsinger about the conditions and Sgt. Daddysman's actions, she smiled and said, "Everybody gets a turn." ARP WCI-756-16 at 25, Defs.' Mot. Dismiss Ex. 31, ECF No. 39-34. She also asked him, "Did you ever stop to think it's just you?" Compl. at 27, ECF No. 4. Clark remained in that cell for 14 days before he was returned to his original cell. Clark asked multiple correctional officers if they knew who had ordered his transfer to another cell. One officer, Lt. McKenzie, told him:

> "[I]t came from high up." ARP WCI-756-16 at 26. Clark alleges that he was placed there in retaliation for standing up to Daddysman and for writing up complaints about Gelsinger in the past.

*Clark I*, 2018 WL 1453333, at *2.

Clark asserted that Gelsinger was responsible for the retaliatory cell transfer because he had written several complaints about her, including one as recently as December 14, 2015. *Id.* at *5. In response, Defendants submitted the declaration of Lt. Robert Carder, who stated that Clark was moved to a new cell on March 15, 2016 due to institutional needs and denied that the cell was covered in feces or that Clark ever complained about its condition to correctional officers in charge of the housing unit. He further asserted that Clark was provided with ample cleaning supplies when he was moved to the new cell. Based on these facts, the Court denied summary judgment in favor of Gelsinger.

In the Second Motion, Gelsinger has submitted a declaration in which she denies that she was involved in the decision to move Clark to another cell on March 15, 2016. She asserts that at the relevant time, decisions regarding inmate housing assignments were made by the Housing Unit Manager or Officer in Charge, not the Assistant Warden. According to Gelsinger, on an unspecified day after March 15, 2016, she spoke to Clark, who complained about Daddysman and his move to Housing Unit 3. She states that Clark did not tell her that his cell contained feces. Gelsinger advised Clark that he did not have a right to any specific housing and he could be moved any time in order to accommodate the needs of the institution. She does not recall telling Clark that "Everyone gets a turn." Gelsinger Decl. ¶ 4, ECF No. 82-2. She acknowledges making the statement "Did you ever stop to think it's just you," or words to that effect, but explains that she meant that Clark was paranoid and reading more into the situation than was warranted, and that the move was simply routine. *Id*. Gelsinger acknowledges that she knew Clark from when she

3

worked at Roxbury Correctional Institution ("RCI") and recalls a complaint he asserted relating to his legal mail at RCI, but she stated that she does not recall any Administrative Remedy Procedure complaints ("ARPs") filed by Clark against her at RCI. According to Clark, while at RCI, Gelsinger stopped his legal mail from being sent out and then had him transferred to WCI.

Gelsinger has also submitted another declaration by Carder, who states that on March 15, 2016, Clark was moved from Housing Unit 1 to Housing Unit 3 to free up a wheelchair-accessible cell in Housing Unit 1 for inmate Jerome Miller, who needed to be temporarily housed in Housing Unit 1. According to Carder, at that time, the only available wheelchair-accessible cell into which Clark could be place was the cell vacated by Miller in Housing Unit 3. On March 28, 2016, when Miller no longer needed to be housed in Housing Unit 1, Clark was returned to his former cell. Clark, however, maintains that other wheelchair-accessible cells were available during this time.

Carder denies that Clark reported that the cell in Housing Unit 3 contained feces. According to Carder, if Clark had reported that the cell contained feces, a specially trained blood-spill team would have disinfected and cleaned the cell. Instead, as a matter of routine, Clark was provided unspecified cleaning supplies upon his transfer to the new cell.

In his own affidavit, Clark asserts that the cell smelled of feces and urine, and that as a result of being housed in the cell, he became ill and was unable to hold food down. Clark has submitted a sick call slip, dated April 3, 2016, in which he reported the illness which he attributed to exposure to human body waste from another inmate.

## DISCUSSION

**I.     Second Motion for Summary Judgment**

Gelsinger is seeking summary judgment based on exhibits submitted with the First Motion and the Second Motion. Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact,

4

and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

In denying the First Motion, the Court found that Clark had stated a claim for an Eighth Amendment violation based on the allegation that he was placed in a cell with human feces spread around the interior and concluded that there remained a genuine issue of material fact relating to the condition of the cell. *Clark I*, 2018 WL 1453333, at *10-11. The Court also found that Clark had stated a First Amendment retaliation claim based on the allegation that he was moved out of the more desirable Housing Unit 1 and into the feces-covered cell in the less desirable Housing Unit 3 in retaliation for his complaints against Daddysman and Gelsinger, and that there remained genuine issues of material fact on who decided to transfer Clark, what role Gelsinger played in that decision, why Clark was transferred only to be returned to his original cell only two weeks later, why he was transferred to that particular cell as opposed to other available cells, and the condition of the cell at the time of the transfer. *Id.* at *12-13.

The additional evidence submitted with the Second Motion does not resolve the disputed issues of fact. In particular, the condition of the cell remains in dispute. Although both Gelsinger and Carder, in their declarations, deny that Clark complained that there was fecal matter in his cell,

5

they do not assert that the cell was sanitary or lacked human waste when Clark was transferred there. To the contrary, Clark has stated in his declaration that he advised Gelsinger "face to face" that he was in a contaminated cell on March 17, 2016. Clark Opp'n at 5, ECF No. 83. He has also submitted an ARP that he filed on March 21, 2016 in which he specifically complained about the feces in the cell and a sick call request dated April 3, 2016, after his return to Housing Unit 1, in which stated that he had become ill from the exposure to human waste in the cell. Thus, there remains a genuine issue of material fact on whether the cell had feces spread inside of it.

Likewise, the reason for Clark's transfer to Cell 3-B-16, the allegedly contaminated cell, remains in dispute. Carder asserts that the Clark's transfer to Housing Unit 3 and Cell 3-B-16 was not retaliatory but was instead necessitated by a need to move Miller to Housing Unit 1 and the lack of any other wheelchair-accessible cell to which to transfer Clark other than Cell 3-B-16. However, Carder had not explained why Miller had to be moved to Housing Unit 1, nor do the submitted records reveal the reason. According to the WCI Institutional Directive on Inmate Transfers and Housing submitted with the Motion, wheelchair-bound inmates may be housed in Housing Units 1, 2, or 3. Although Housing Unit 1 is reserved for inmates who meet a high or the highest level of appropriate behavior, Miller was on disciplinary segregation both before and after his move to Housing Unit 1. Significantly, Clark asserts in his declaration that there were multiple other wheelchair-accessible cells in Housing Unit 3, specifically Cells 3-B-19 to 3-B-24, and that at least one other inmate can attest to that fact.

Although Gelsinger asserts that housing decisions are made by other correctional personnel, and she is not listed as the officer responsible for the movement of either Clark or Miller, she does not contest Clark's assertion that he was told by another correctional officer that the decision "came from high up." *Clark I*, 2018 WL 1453333 at *2. Moreover, the records listing

6

the officers responsible for certain transfers do not address whether Gelsinger knew that the cell was unsanitary and refused to move Clark in retaliation for his prior complaints. Notably, she does not actually deny telling Clark that "Everybody gets a turn" or "Did you ever stop to think it's just you?" Gelsinger Decl. ¶ 4.

Thus, the additional evidence submitted with the Second Motion does not resolve the disputes of material fact central to Clark's remaining claims, particularly the reason for Clark's transfer to Cell 3-B-16, the condition of that cell, and the availability of alternative cells. Accordingly, the Court cannot find that Gelsinger is entitled to summary judgment on Clark's retaliation claim.

## II. Motion for Discovery

Clark has also filed a "Motion of Affidavit Pursuant to Rule 56(d) to Establish the Existence of all Genuine Issues of Material Fact," which the Court construes as an affidavit submitted under Federal Rule of Civil Procedure 56(d) seeking discovery before a ruling on the Second Motion. Where a party seeks summary judgment before discovery has occurred, and because the nonmoving party on a motion for summary judgment "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion, *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985), the nonmoving party may seek denial of such a motion by filing an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002).

In the Rule 56(d) affidavit, Clark disputes Carder's representation that no other wheelchair-accessible cell was open in Housing Unit 3 other than Cell 3-B-16, Miller's feces-covered cell. He seeks discovery on the names of the inmates who occupied Cells 3-B-19 through 3-B-24 from

7

March 15-28, 2016 and the "traffic sheet history" showing movements in and out of these cells. Rule 56(d) Aff. at 5, ECF No. 87. Clark claims that these cells were unoccupied and wheelchair-accessible. Clark also seeks the opportunity to obtain a statement from another inmate who could testify that Cell 3-B-19 was unoccupied until he was moved into it two days after Clark was moved into Cell 3-B-16. Because whether another wheelchair-accessible cell was available on March 15, 2016 is a material fact, and the requested evidence is relevant to the determination of that fact, the Rule 56(d) affidavit provides an alternative ground to deny the Second Motion: that summary judgment cannot fairly be granted without first affording Clark the opportunity to engage in discovery. To the extent that the Rule 56 affidavit can be construed as a separate Motion seeking denial of the Second Motion based on a lack of discovery, the Motion will be granted.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that:

1. Gelsinger's Second Motion for Summary Judgment, ECF No. 82, is DENIED.

2. Clark's "Motion of Affidavit Pursuant to Rule 56(d) to Establish the Existence of all Genuine Issues of Material Fact," ECF No. 87, is GRANTED IN PART to the extent that it seeks denial of the Second Motion based on a lack of discovery. The Motion is otherwise DENIED.

3. Gelsinger is DIRECTED to file an Answer to the remaining claims within **14 days** of the date of this Order. No additional Motions for Summary Judgment will be considered prior to discovery.

4. Clark may FILE a Motion for Appointment of Counsel within **21 days** of the date of this Order.

5. The Clerk shall SEND a copy of this Memorandum Order to Clark and to counsel for Gelsinger.

Date: March 18, 2019


THEODORE D. CHUANG
United States District Judge